IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN R. RANN, )
 )
         Petitioner, )
 )
vs. ) Case No. 08–cv–792–DRH–SCW
 )
DONALD HULICK, Warden, )
Menard Correctional Center, )
 )
         Respondent. )

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This Report and Recommendation is respectfully submitted to United States District Judge David R. Herndon pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (C)**.

On November 14, 2006, Petitioner Steven R. Rann was convicted of two counts of criminal sexual assault and one count of child pornography by a Saline County jury. On February 2, 2008, he was sentenced to consecutive terms of twelve years imprisonment on each sexual assault conviction and fifteen years for the child pornography conviction. Now before the Court is his petition for writ of habeas corpus pursuant to **28 U.S.C. § 2254.**

## II. Procedural History

Petitioner filed a direct appeal in state court. In his direct appeal, Rann alleged that he received ineffective assistance of counsel because his trial counsel did not seek to suppress images obtained from a zip drive and camera memory card that were obtained without a warrant.[1] After

---

[1] Petitioner also asserted that he was denied a fair trial because the court refused to sever the separate charges of child pornography and sexual assault. However, only the ineffective assistance of counsel argument forms the basis of the petitioner's § 2254 petition.

exhausting that procedure, Rann filed a petition for writ of habeas corpus pursuant to **28 U.S.C. § 2254.** Petitioner's petition was filed on November 10, 2008 (Doc. 2). Petitioner has filed a supplemental memorandum with his petition (Doc. 3). Respondent filed his answer to the petition on January 28, 2010 (Doc. 17). Petitioner filed a reply to that response on April 12, 2010 (Doc. 22).

This recitation of the facts giving rise to Rann's conviction are derived from the Fifth District Appellate Court's Rule 23 Order affirming the conviction on direct appeal (Doc. 17 Ex. C). [2]

> In January 2006, the defendant's biological daughter, S.R., who was then 15 years old, reported to the Eldorado police department that she had been sexually assaulted by the defendant and that he had taken pornographic pictures of her. Following her interview by the police, S.R. returned to her home, retrieved an Olympus digital camera memory card from the top of a big-screen television set in her parents' bedroom, and took the memory card to the police. The officer to whom she delivered the memory card, Deputy Sheriff Investigator Mike Jones of the Saline County Sheriff's Department, testified at the defendant's subsequent trial that no law enforcement officers accompanied S.R. on her return to her home, and there is no evidence in the record to suggest that S.R. was directed to attempt to recover evidence for the police or even to return home at all. Images downloaded from the memory card depict the defendant sexually assaulting S.R. and were introduced into evidence at the defendant's trial... The images, taken in 2005, were admitted as propensity evidence...and do not relate directly to the charges of which the defendant was convicted in this case.
>
> Sometime subsequent to S.R.'s initial interview with the police, S.R.'s mother brought Deputy Jones a computer zip drive that contained additional pornographic images of S.R. and pornographic images of K.G., who is the defendant's stepdaughter and S.R.'s half-sister. The images on the zip drive are from 1999 and 2000, when S.R. was approximately 9 years old and K.G. was approximately 15 years old, and are directly related to the charges of which the defendant was convicted in this case. Four of the images, taken around Christmas of 1999, were admitted into evidence at the defendant's trial... Deputy Jones testified that no law enforcement officers were present when S.R.'s mother procured the zip drive, and there is no evidence in the record to suggest that S.R.'s mother was directed to attempt to recover evidence for the police.

---

[2] "State court factual findings...are presumed correct," and "the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (quoting 28 U.S.C. § 2254(e)(1)); *Arredondo v. Huibregtse*, 542 F.3d 1155, 1168 (7th Cir. 2008). Petitioner concedes that the procedural history and the factual background as related to the appellate court are accurate although he does not concede that the factual summary describes the events that were the basis for his prosecution. However, Rann has not sought to rebut the presumption or offered any other version of the facts.

(People v. Rann, No. 5-07-0103 (Ill. Appt. Ct.); (Doc. 17 Ex. C).

### III. Grounds for Habeas Relief

Petitioner asserts only one basis in his original petition for habeas relief:

1. Rann was denied effective assistance of counsel at trial because counsel failed to move to suppress the digital camera memory card and zip disk obtained by the police from Rann's family.

### IV. Exhaustion and Procedural Default

Petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boercked*, 526 U.S. 838, 842 (1999). "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845; *see also* 28 U.S.C. § 2254(c). In *O'Sullivan*, the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances, which are not applicable to this case). *O'Sullivan*, 526 U.S. at 843-46.

Here, the respondent concedes that Rann has cleared both hurdles. He has exhausted all available avenues of relief through the Illinois system and has adequately presented his issue of ineffective assistance of counsel for a full round of consideration in the state courts.

### V. Analysis

This habeas petition is subject to the provisions of the Antiterrorism and Effective

Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 1849 (2002).

Habeas is not another round of appellate review. Federal courts do not review state court determinations of state law questions on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993). § 2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In his habeas petition, the petitioner alleges that he received ineffective assistance of counsel because his trial counsel failed to pursue motions to suppress evidence that police discovered on a camera memory disk and zip drive. The Appellate Court for the Fifth District ultimately determined that petitioner's counsel was not ineffective as a motion to suppress would not have been successful. Whether counsel was ineffective is governed by *Strickland v. Washington*, 104 S.Ct. 2052, 2064-65 (1984). The issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "Avoiding these pitfalls does not require citation of [Supreme Court] cases - indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365 (2002) (emphasis in original). The Supreme Court most recently announced that in reviewing a habeas petition, the reviewing court must decide if "fairminded jurists could disagree" that a state court decision conflicts

with Supreme Court precedent. *See Harrington*, - - U.S. - -, 131 S.Ct. 770, 786 (2011); *Cullen v. Pinholster*, – U.S. –, – S.Ct. –, No. 09-1088, 2001 WL 1225705 at * 11 (2011).

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id.* at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.* at 662 (internal citation omitted). The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas cases, federal courts must honor any "reasonable" state court decision; "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). Both the *Strickland* standard and a review under § 2254 are highly differential on their own, but "when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, - - U.S. - -, 131 S.Ct. at 788; *Cullen*, 2011 WL 1225705, at *12 (counsel strongly presumed to have rendered adequate assistance and review of assistance under habeas is "doubly deferential").

Further, when, as in this case, Rann also alleges that the ineffective assistance claim stems from counsel's failure to file a motion to suppress "the defendant must also prove 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *see also United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)). This standard must be proved "over and above" the *Strickland* standard. *Johnson v. Thurmer*, 624 F.3d 786, 792-93 (7th Cir. 2010). At best, this is a difficult feat, "particularly since *Strickland* requires that [the Court] presume

counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Ebert*, 610 F.3d at 411 (citing *Strickland*, 466 U.S. at 690).

A.  **Child Pornography Count**

   1.  **Zip Drive**

In his habeas petition, Rann argues that his counsel was ineffective for failing to seek to suppress two digital media police obtained from S.R. and her mother. Specifically, Rann argues that his counsel should have sought to suppress the zip drive that police obtained from S.R.'s mother, which was brought to them subsequent to S.R.'s interview at the police station. In order to substantiate his *Strickland* claim, Rann must show that he would have been successful on his motion to suppress had his attorney filed the motion.

Rann argues in his habeas petition that he would have been successful on his motion to suppress the pictures found on the zip drive because the act of the police viewing the pictures on the zip drive was a Fourth Amendment activity requiring probable cause and a warrant. Respondent argues that the search of the zip drive was not a Fourth Amendment activity as the search was conducted by a private individual which did not require probable cause or a warrant.

A Fourth Amendment issue arises out from a search when "the government violates a subjective expectation of privacy that society recognizes as reasonable." *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) (quoting *Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)); *see also United States v. Jacobson*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). While the Fourth Amendment applies to searches and seizures committed by the government, it does not apply to "a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *Jacobson*, 466 U.S. at 113-14, 104 S.Ct. 1652, 80 L.Ed.2d 85 (citing *Walter v. United States*, 447 U.S. 649,

662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting)). In order to determine whether an individual was conducting a private search or acting at the direction of, or with participation from the government, the Court must ask "'whether the government knew of or acquiesced in the intrusive conduct and whether the private party's purpose in conducting the search was to assist law enforcement agents or to further its own ends.'" *United States v. Ginglen*, 467 F.3d 1071, 1074 (7th Cir. 2006) (quoting *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997) (citations omitted)). "Other useful criteria are whether the private actor acted at the request of the government and whether the government offered the private actor a reward." *Id.* The Court is to consider all of the circumstances when making this determination and must make its analysis on a case by case basis. *Sahid,* 117 F.3d at 325.

Here, this Court finds that the Appellate Court properly applied the principles set forth in *Strickland* and *Kimmelman*. The Appellate Court relied on *People v. Patterson*, 217 Ill.2d 407, 438 (2005), which in turn relied on *Strickland*. In *Patterson*, the Illinois Supreme Court relief on the principles set forth in *Strickland* to determine whether a defendant had suffered from ineffective assistance of counsel when his counsel failed to file a motion to suppress.[3]

However, Rann argues that the Appellate Court's application of those principles was unreasonable in light of the facts presented in the case. While Rann does not argue that S.R.'s mother was acting at the direction of the police when she brought the zip drive to the police station, Rann

---

[3] In *Patterson*, the Illinois Supreme Court cited to *Strickland* for the basis of its decision on the ineffective assistance of counsel claim. The Illinois Supreme Court correctly cited *Strickland* for the proposition that a defendant must show that his counsel's performance was deficient and he was prejudiced by those deficiencies to support his ineffective assistance of counsel claim. While the Illinois Supreme Court did not directly cite to *Kimmelman*, the Illinois Supreme Court correctly stated that when the ineffective assistance is based on a failure to file a motion to suppress, the defendant must further prove that such motion, if filed, would have been successful, and that the outcome of trial would have been different had the motion been filed. *Patternson*, 217 Ill. 4d at 438 (citing *People v. Orange*, 168 Ill.2d 138, 153 (1995)).

argues that the actions of police in downloading those images, which required the aid of the Illinois State Police and the US Immigration and Naturalization Service, was a Fourth Amendment activity which required probable cause and a warrant. The Court first notes that Rann would be hard pressed to argue that S.R.'s mother was not acting as a private party and instead acting as an agent of the Government. Unlike S.R. who arguably talked to the police before obtaining the memory card from Rann's home, there is no evidence in the record that S.R.'s mother spoke to police before procuring the disk. Further, there is no evidence that she was acting at the direction of the Government. S.R.'s mother brought the zip drive to the police station sometime after S.R.'s initial interview and without any presence of law enforcement or direction by police officers. Clearly, S.R.'s mother was acting as a private individual when she delivered the zip drive to the police.

However, Rann argues that the police's download and viewing of those images after they received the zip drive, required a warrant. Rann argues that the search conducted by the police was a "significant expansion" of the original search by S.R.'s mother as the police viewed the pictures on the zip drive which had not previously been viewed by persons other than defendant. *See United States v. Runyon*, 275 F.3d 449 (5th Cir. 2001). However, as the Illinois Appellate Court pointed out in their Rule 23 Order, there is no evidence in the record to support Rann's suggestion that S.R.'s mother did not know what was on the zip drive (*See* Doc. 17 Ex. C at p.6). Further, as the appellate court noted, "it seems highly likely that S.R.'s mother [compiled] the images on the zip drive herself, downloading them from the family computer." (*Id.*). There is no evidence in the record that the police exceeded the scope of the original search as to the zip drive. *See Runyan*, 275 F.3d at 463-464 (defendant's expectation of privacy frustrated when contents of container were rendered obvious to the police by a prior private search, although the Fifth Circuit ultimately found that the police had exceeded the scope of the private search in that case because police viewed additional disks not viewed in the private search).

The Court notes that while the appellate court did not necessarily cite to *Runyon* or *Jacobson* in its analysis of Rann's claims, the appellate court cited to *People v. Phillips*, 215 Ill.2d 554, 566 (2005) which, in turn, relied heavily on the analysis and findings set forth in *Jacobsen*. Further, the findings and analysis set forth in *Phillips* is virtually identical to the legal holdings propounded in *Runyan*. *See Phillips*, 215 Ill.2d at 567 (police search did not exceed the scope when the viewed video files private search had already revealed to be child pornography as the police merely confirmed the private searcher's findings); *see also Runyan*, 275 F.3d at 464, 465 (police do not exceed scope when view same materials examined by private search even when police review material more closely); *United States v. Bowman*, 907 F.2d 63 (8th Cir. 1990) (police did not exceed scope when a private search of one of five sealed bundles revealed the contents to be cocaine and federal agents later opened the four additional bundles to confirm that they also contained cocaine). Clearly, the appellate court's finding that the police did not exceed the scope of the mother's private search was a reasonable application of *Strickland* and *Jacobson*.

### 2. Camera Memory Card

Rann also argues that his counsel was ineffective for failing to file a motion to suppress images obtained from the camera memory card. Unlike the images obtained from the zip drive, Rann argues that the memory card was obtained from S.R., a minor who Rann argues lacked authority to consent to the search of the memory card. Rann contends that the memory card is analogous to a container or a foot locker which requires separate probable cause and warrant to search the contents of the media card. *United States v. Runyon*, 275 F.3d 449, 460-64 (5th Cir. 2001) (Although the Fifth Circuit never decided the issue definitively, the government conceded the computer disks at issue in this case were "containers" for purposes of Fourth Amendment search and seizure analysis and thus the Fifth Circuit assumed that the disks were containers). Rann argues both that S.R. acted as an agent of

the government when she retrieved the memory card from her father's house and that even if she was not acting as an agent, the police exceeded the scope of the private search when they viewed the contents of the memory card.

Contrary to Rann's argument, the facts established in the record, which are presumed correct, show that S.R. was not acting as a government agent when she retrieved the memory card from her house. While Rann argues that an ordinary person in S.R.'s position would presume that the police would want more evidence and assume that she had been instructed to return to the home to gather evidence, there is no evidence in the record to suggest that the police directed S.R. to retrieve evidence from the home. In fact, the appellate court noted that S.R. was not directed to return to the home following her interview nor was she accompanied back to the home by a police officer. Instead, S.R. returned to her home and retrieved the digital camera memory card from her parent's bedroom without direction from the police and brought the card back to the police station. Everything in the record suggests that S.R. conducted a private search without the knowledge of the police.

Rann contends that even if the retrieval of the memory card constituted a private search, the police exceeded the scope of that search when they viewed the contents of the memory card. *See United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008) (citing *United States v. Jacobson*, 466 U.S. at 115); *Runyan*, 275 F.3d at 460. In determining whether a search exceeds the scope of the private search, the Supreme Court has directed lower courts to determine "whether authorities obtained information with respect to which the defendant's expectation of privacy has not already been frustrated"; in other words; courts should ask "whether the government learned something from the police search that it could not have learned from the private searcher's testimony." *Runyon,* 275 F.3d at 461 (citing *Jacobsen*, 466 U.S. at 118-20, 104 S.Ct. 1652). In *Runyan*, the Fifth Circuit ruled that a search did not exceed the scope of a private search if it was merely conducted to confirm the police's prior knowledge that was obtained

from the private search. *Id.* at 463. In other words, opening a container not already opened by a private searcher would not violate the Fourth Amendment as long as the police knew with "substantial certainty" what the contents of the container would be. *Id.*(finding that police's search of several zip drives and floppy disks exceeded the scope of the private search when private citizen had not viewed contents of all of the disks but only a sampling of the disks so police could not know with substantial certainty the contents of all of the disks).

In this case, the appellate court found that the police did not exceed the scope of S.R.'s search by viewing the images on the memory card because the police were merely confirming what was already known by S.R., that the memory card contained pornographic images. Rann argued before the appellate court, as he does here, that the content of the memory card was unknown to anyone but the defendant and that the police did not know for certain what the memory card contained. Rann goes on to argue that the camera could have contained entirely different pictures, that were not relevant to the charges against him. The nature of the pictures were unknown to the police.

However, Rann has presented no evidence to refute the factual findings of the state court. The appellate court found that the police knew exactly what was on the memory card and that S.R. knew what was on the memory card as she turned over exactly one memory card. The appellate court found evidence to be conclusive that both S.R., her mother, and the police knew the contents of the memory card retrieved by S.R.; Rann has offered no evidence rebutting those findings. *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000); *Rice v. Collins*, 546 U.S. 333, 338-39, 126 S.Ct. 969 (2006).

As with the zip drive, the appellate court's finding that the viewing of the memory card procured by S.R. by the police did not exceed the scope of S.R.'s search is not an unreasonable application of federal law. Instead, the appellate court's analysis fits squarely with the holding in *Runyan*, that the Government's act of confirming the findings of the private search does not exceed the scope

from the private search. *Id.* at 463. In other words, opening a container not already opened by a private searcher would not violate the Fourth Amendment as long as the police knew with "substantial certainty" what the contents of the container would be. *Id.*(finding that police's search of several zip drives and floppy disks exceeded the scope of the private search when private citizen had not viewed contents of all of the disks but only a sampling of the disks so police could not know with substantial certainty the contents of all of the disks).

In this case, the appellate court found that the police did not exceed the scope of S.R.'s search by viewing the images on the memory card because the police were merely confirming what was already known by S.R., that the memory card contained pornographic images. Rann argued before the appellate court, as he does here, that the content of the memory card was unknown to anyone but the defendant and that the police did not know for certain what the memory card contained. Rann goes on to argue that the camera could have contained entirely different pictures, that were not relevant to the charges against him. The nature of the pictures were unknown to the police.

However, Rann has presented no evidence to refute the factual findings of the state court. The appellate court found that the police knew exactly what was on the memory card and that S.R. knew what was on the memory card as she turned over exactly one memory card. The appellate court found evidence to be conclusive that both S.R., her mother, and the police knew the contents of the memory card retrieved by S.R.; Rann has offered no evidence rebutting those findings. *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000); *Rice v. Collins*, 546 U.S. 333, 338-39, 126 S.Ct. 969 (2006).

As with the zip drive, the appellate court's finding that the viewing of the memory card procured by S.R. by the police did not exceed the scope of S.R.'s search is not an unreasonable application of federal law. Instead, the appellate court's analysis fits squarely with the holding in *Runyan*, that the Government's act of confirming the findings of the private search does not exceed the scope

of the private search. Therefore, the appellate court was not unreasonable in finding that a motion to suppress the findings of the memory card would have been futile. Accordingly, Rann's arguments as to the search conducted on the memory card also fails.

**B.     Sexual Assault Count**

Rann also argues that his counsel's failure to file a motion to suppress prejudiced his sexual assault count. Under *Strickland*'s prejudice prong, the petitioner must "demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that undermines the confidence in the outcome. *Id.* "Even if the odds that the defendant would have been acquitted had he received effective representation appear to be less than fifty percent, prejudice has been established so long as the chances of acquittal are better than negligible." *Harding v. Sternes*, 380 F.3d 1034, 1045 (7th Cir. 2004)(quoting *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003)). A conviction that is supported in the record by considerable evidence is less likely to be prejudiced errors. *Id.* at 1046 (citing *Strickland,* 466 U.S. at 696).

Here, having found that it was reasonable application of federal law for the appellate court to find that the motion to suppress would not have been successful, Rann suffered no prejudice as to his sexual assault claim with the introduction of any images obtained from the electronic devices. Even assuming that the images obtained from the zip drive and memory card should have been excluded, the evidence against Rann on the sexual assault charges was considerable, even without the images at issue. In discussing Rann's issues on appeal, the appellate court noted that the evidence against Rann on the sexual assault claims were considerable as they included "graphic testimony" from both minors regarding the sexual abuse they suffered at the hands of Rann. There was clearly considerable evidence, independent of the pornographic images offered during the trial from the zip

drive, to support the jury's determination.

Although the appellate court never reached the issue of prejudice, as discussed earlier, the appellate court did identify and apply the correct Supreme Court precedents and ultimately reached the correct conclusion as to Rann's ineffective assistance of counsel claim. Thus, the Court finds that the appellate court's findings were not an unreasonable application of clearly established federal law.

## VI. Recommendation

This Court recommends that petitioner Steven R. Rann's Petition for Writ of Habeas Corpus should be denied in all respects.

Objections to this Report and Recommendation must be filed on or before **May 2, 2011.**

**IT IS SO ORDERED**.

DATED: April 18, 2011.

/s/*Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge
